IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PAMELA HARRIS                                                   PLAINTIFF

v.                          Case No. 4:10-cv-85-DPM

QCA HEALTH PLAN, INC.                                          DEFENDANT

## ORDER

Pamela Harris was a Senior Provider Relations Representative with QualChoice of Arkansas Health Plan, Inc.  After QualChoice received lots of complaints about Harris's work performance, the company disciplined and then fired her.  Harris brought this case, claiming violations of her civil rights. Qual Choice now moves for summary judgment.  FED. R. CIV. P. 56; *Smith v. Fairview Ridges Hospital*, 625 F.3d 1076 (8th Cir. 2010).  And while summary judgment should be granted sparingly in employment-discrimination cases, Rule 56 and the related precedents nonetheless apply with full force.  *Fairview Ridges Hospital*, 625 F.3d at 1082–83.

**1. The Facts.**  The Court must, and does, view the evidence in the light most favorable to Harris.  *Lynn v. Deaconess Medical Center-West Campus*, 160 F.3d 484, 486 (8th Cir. 1998).  Harris started working for QualChoice in 2005

and was promoted several times during her time there.  In early 2009, Harris applied for the company's new Provider Relations Supervisor position. QualChoice rejected her application, telling Harris that she was ineligible because she had not been in her current position for at least one year—a requirement for internal candidates.  Harris was within one month of meeting this time-in-position requirement.

In March 2009, Qual Choice disciplined Harris for not timely returning customer calls.  Later that month, Harris filed a discrimination charge with the EEOC, alleging that QualChoice discriminated against her when it refused to accept her application for the Provider Relations Supervisor position. When customer complaints continued, Harris was given a final warning.  She was fired almost two months after she filed her initial EEOC charge.  Harris later filed another EEOC charge alleging retaliatory firing.

**2.** Having exhausted her remedies with the EEOC, Harris brought this action, claiming violations of § 1981 and Title VII.  Because Harris's Title VII and § 1981 claims "set forth parallel, substantially identical, legal theories of recovery, we apply the same analysis to each claim."  *Humphries v. Pulaski*

-2-

*County Special School District,* 580 F.3d 688, 692 n.3 (8th Cir. 2009) (internal quotations omitted).

**3. Failure To Promote.** Harris has not presented direct evidence of discrimination. The familiar *McDonnell Douglas* burden-shifting analysis therefore governs. *Lake v. Yellow Transportation, Inc.,* 596 F.3d 871, 873 (8th Cir. 2010). To establish a *prima facie* case on her failure-to-promote claim, Harris "must show that: (1) she is a member of a protected group; (2) she was qualified and applied for an available position; (3) she was rejected for that position; and (4) employees similarly situated who are not part of the protected group were promoted instead." *Moore v. Forrest City School District,* 524 F.3d 879, 883 (8th Cir. 2008). The parties dispute only the second and fourth elements.

QualChoice argues that Harris was not qualified for the available position because she did not meet the one-year requirement for internal promotions. Harris responds that QualChoice violated its own policy by allowing Miriam Saliba, another QualChoice employee, to move from Internal Provider Relations Representative to Senior Provider Relations Representative in less than twelve months.

-3-

According to QualChoice, the one-year policy "has not been applied to promotions within the same job track — for instance, individuals seeking to move from a CSR I to CSR II, Internal Provider Relations Representative to Senior Provider Relations Representative, or Claims Processor to Senior Claims Processor[.]" *Document No. 33-2*. Harris denies that there is any "same job track" exception to the promotion policy. But at this point she must do more: she must meet proof with proof and establish a genuine dispute of material fact on this issue. *Conseco Life Insurance Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010).

Harris is correct that there is no written exception in the policy. But viewed in the light most favorable to Harris, the evidence shows the existence of this unwritten exception. In fact, like Miriam Saliba, Harris had benefitted from the exception before — after Harris was hired in 2005, she was promoted from a Customer Service Representative I position to a Customer Service Representative II position after just six months. And Harris acknowledges that the new position for which she applied was different from her Provider Relations Representative position. *Document No. 41*. She was therefore required to meet QualChoice's one-year requirement for internal promotions.

-4-

Because Harris had not been in her current position for twelve months, she was not qualified to be the new Provider Relations Supervisor.

Even if Harris could establish the second element of her *prima facie* case, she has not shown that similarly situated employees outside her protected class were treated any differently. The only other internal employee who applied for the position was Miriam Saliba; and QualChoice also told Saliba that she was ineligible because she had not held her current job for a year either. Harris points to no other employee who was allowed to apply for the position despite not meeting the one-year requirement. And the candidate who received the job was not similarly situated to Harris—as an outside applicant, she was not subject to the one-year restriction. Without any similarly situated comparators, Harris cannot establish the fourth element of her *prima facie* case. Her failure-to-promote claim therefore fails as a matter of law.

**4. Disparate Treatment.** Harris also alleges that she was disciplined differently than other employees because of her race. To establish her *prima facie* case on disparate treatment, Harris must show: (1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate

-5-

expectations; (3) that she suffered an adverse employment action; and (4) that "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently.)" *Lake*, 596 F.3d at 874.

Setting aside QualChoice's reason for firing Harris—many customer complaints over a short period of time—the evidence shows that Harris was otherwise meeting expectations. *Ibid*. Further, Harris has pointed to three white employees who were disciplined differently than she was. Under the "low-threshold standard" applied at this stage, at least two of these employees—Employee B and Employee A—are similarly situated enough for Harris to make out her *prima facie* case. *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009). No one disputes that Harris is a member of a protected class or that being fired is an adverse employment action.

The burden thus shifts to QualChoice to give "a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action." *Humphries*, 580 F.3d at 692–93 (internal quotation omitted). The company has done so. QualChoice says it fired Harris because it received an unusually high number of complaints from its customers about her in a relatively short

period of time. QualChoice has documented these complaints. In light of this legitimate, nondiscriminatory explanation, Harris must show that QualChoice's alleged reason for firing her was actually a pretext for discrimination. *Humphries*, 580 F.3d at 693.

Harris argues that three other QualChoice employees were disciplined differently than she was. But the burden for showing that these employees were similarly situated to Harris is more rigorous at the pretext stage. *Wimbley*, 588 F.3d at 962. Harris must show that these employees were "similarly situated in all relevant respects" to establish pretext. *Ibid.*

Harris's first alleged comparator is Employee C—who was suspected of falsifying her time records. This suspected violation, however, is of a very different character than Harris's performance problems. Further, the record shows that QualChoice had nothing more than a suspicion of wrongdoing about Employee C. As to Harris, however, the record contains extensive evidence of customer complaints. Because Harris and Employee C were not similarly situated "in all relevant respects[,]" Employee C is not a proper comparator. *Wimbley*, 588 F.3d at 962.

Harris next points to Employee B, an Internal Provider Representative. His job was different than Harris's. Although it involved some customer interaction, it did not require the high level of customer interactions that Harris's position did. And while Employee B did have some complaints from providers during his tenure at QualChoice, the primary reason for the company's first and second disciplinary actions against him was a high error-rate in his routine daily work—not consistent customer dissatisfaction. Customer complaints were only a secondary issue until Employee B's final warning. Further, the record shows that Harris's supervisors considered placing Harris on a performance improvement plan as well, but decided against it because they felt her problems were more serious than Employee B's.

Not only are Employee B and Harris not similarly situated, Employee B's treatment was not so different from Harris's as to suggest pretext. His disciplinary incidents did come in a different form than hers, but Harris was given just as many chances for improvement as Employee B was. Employee B received two performance improvement plans and a final warning; Harris received an initial verbal counseling, an initial written counseling, and a final

-8-

warning.  Although they may have been treated differently in form, the substance of their treatment was substantially similar.  Harris therefore cannot show that Employee B was similarly situated to her under *Wimbley*'s rigorous standard or that QualChoice's treatment of him was so different that it suggests pretext to a reasonable fact finder.

Finally, Harris points to Employee A, a woman who held the same position as Harris.  Employee A was disciplined under an earlier disciplinary policy than Harris; and QualChoice argues that under that policy, performance problems and behavior problems were considered on different tracks.  For example, under the older policy, an employee could have two initial written improvement notices in her personnel file at any given time—one for behavior issues and another for performance issues.

Harris argues that the policy language did not provide for this distinction.  She is correct.  But again, Harris's burden at this point is to meet proof with proof.  The evidence in the record indicates that the earlier policy did, however, treat behavior problems and performance problems separately.  For example, Employee A received two different corrective action forms on the same day:  one was an extension of a final warning she had received

-9-

almost a full year earlier for behavior problems; and the other was an initial counseling for performance problems, including customer complaints. If behavior and performance were not treated differently under the old policy, this outcome would be nonsensical. This undisputed evidence indicates that the two types of disciplinary issues were treated differently under the old policy. Because Harris and Employee A were disciplined under different policies, they were not similarly situated in all relevant respects.

When it disciplined Harris, QualChoice followed its written policy to the letter. She received an informal verbal counseling, an initial written improvement notice, and a final warning before she was terminated. Without any similarly situated comparators who were treated differently or any other evidence of pretext, Harris's disparate-treatment claim fails as a matter of law. *Fairview Ridges*, 625 F.3d at 1088.

**5. Retaliation.** Finally, Harris brings a retaliatory-firing claim. She alleges that QualChoice fired her because she filed an EEOC charge when she was not allowed to apply for the Provider Relations Supervisor position. To succeed here, Harris "must show that (1) she was engaged in a protected activity (opposition or participation); (2) she suffered an adverse employment

action; and (3) the adverse action occurred because she was engaged in the protected activity." *Hunt v. Nebraska Public Power District*, 282 F.3d 1021, 1028 (8th Cir. 2002); *see also* 42 U.S.C.A. § 2000e-3(a) (West 2003).   The parties dispute only the third element.

Harris's only evidence of causation is timing.   "The requisite causal connection may be proved circumstantially by proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992).   But temporal proximity alone is generally insufficient to create a genuine issue of fact on a retaliation claim. *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 675 (8th Cir. 2006).   After the fact is not necessarily because of the fact.

QualChoice was notified of Harris's EEOC charge in late March 2009. She received her final warning about three weeks later and was fired almost two months after filing her charge.   Viewing the timing evidence in the light most favorable to Harris, the Court concludes that the gap between the EEOC filing and her discipline and firing is not small enough, standing alone, to

-11-

allow a reasonable inference of retaliatory motive.  Harris's retaliation claim therefore fails as a matter of law too.  *Wedow*, 442 F.3d at 675.

* * *

QualChoice's motion for summary judgment, *Document No. 33*, is granted.  Harris's amended complaint is dismissed with prejudice.

So Ordered.

_D̅P̅M̅ Marshall Jr._____

D.P. Marshall Jr.
United States District Judge

_14 April 2011_